IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO: 5:25CR173 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEMAR DAWSON, | ) | <u>RESPONSE TO MOTION TO REVOKE DETENTION ORDER</u> |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

Now comes the United States of America, by and through counsel, Carol M. Skutnik, Acting United States Attorney, and Peter E. Daly, Assistant United States Attorney, and hereby files its response in opposition to Defendant's motion asking the district court to revoke the magistrate judge's Order of detention for Defendant Demar Dawson. (*See* ECF # 17: Motion, PageID 61-68).

## I. FACTUAL AND PROCEDURAL HISTORY

On August 15, 2024, an Akron Fire Department (AFD) ambulance and engine were traveling on Route 8 when they noticed smoke rising from a residential area next to the highway. The AFD personnel exited Route 8 and located the fire at a residence on Corwin Avenue, Akron. The property was a single-family rental house. The resident and her juvenile daughter were inside at the time but were unaware of the fire until AFD alerted them and removed them from the house. The AFD engine located the fire on the back deck of the house and extinguished it.

Firefighters observed the odor of gasoline in the area of the fire. The fire caused damage to the deck and the rear wall of the house.

ATF SA/CFI (Certified Fire Investigator) Clay McCausland responded to the scene a short time after the fire was extinguished and began his investigation, along with an investigator from the Ohio State Fire Marshal's Office. Ultimately, the fire was determined to have been intentionally set. An ignitable liquid detecting K9 gave a positive alert on the deck. Lab testing of wood samples cut from the deck confirmed the presence of gasoline.

Defendant lived in the rental home across the street from the fire location. Both houses are located at the end of a dead-end street. A fence ran along the end of the street and the property lines of both houses. Over the fence was a wooded area which bordered Ohio Route 8. Defendant had been served an eviction notice the morning of the fire and stated to investigators that the locks had been changed to prevent him from accessing the house.

Video from local businesses and a gas station a short distance from the scene showed that approximately twenty-five minutes before AFD located the fire, Defendant drove from his residence to the gas station and filled a portable gas tank with gasoline. Approximately eight minutes later, video showed that Defendant returned to his residence and pulled to the back of the driveway. Approximately six minutes later, video showed a person (not identifiable, but wearing clothing similar to Defendant's) walk from Defendant's driveway toward the street and then go behind the guardrail at the dead-end, walking toward the fire location. Approximately three minutes after the person disappeared behind the guardrail, the video showed smoke coming from the fire location. One minute later, the person reappeared behind the guardrail at the dead-end and walked back down Defendant's driveway, out of view. Five minutes later, AFD arrived on the scene.

As part of his investigation, SA/CFI McCausland noted that there was a cut opening in the fence in the backyard of the fire location, which would allow a person to enter the yard from the wooded area. This would have allowed access to the yard by the person who walked behind the guardrail at the end of the street.

Review of the data from Defendant's cellular phone showed that Defendant and the adult female resident of the fire location were engaged in a romantic relationship, but that the resident was also in another relationship at the same time. Messages indicated that in the months leading up to the fire, the female appeared to be less interested in continuing their relationship than Defendant was.

Defendant's phone data also showed Health app data which corresponded to the movements of the subject on the video in the moments before the fire. Specifically, Defendant's phone showed step counts, distance traveled, and periods of activity that matched the movements of the video subject. The data also corresponded with Defendant's known movements at other times on the morning of the fire (e.g., traveling to and walking around at the gas station; moving around during the AFD activity). SA/CFI McCausland conducted a detailed analysis of those known movements and compared them to the health data at various intervals, finding that they corresponded almost exactly.

During an interview with investigators, Defendant denied any involvement in the fire. He claimed that he bought the gasoline just prior to the fire so he could mow the grass one last time before leaving his house after he was evicted.

On April 16, 2025, a grand jury for the United States District Court for the Northern District of Ohio returned a one-count indictment charging Defendant with arson, in violation of 18 U.S.C. § 844(i). Defendant was arrested on April 24, 2025, and arraigned before Magistrate

Judge Amanda M. Knapp on the same day. (ECF N/A: Minutes of Proceedings, 04/24/2025). Upon the government's motion for detention, Magistrate Judge Knapp ordered Defendant temporarily detained pending a hearing. (ECF # 6: Order, PageID 17).

On April 30, 2025, Magistrate Judge Jennifer Dowdell Armstrong held a detention hearing. (ECF N/A: Minutes of Proceedings, 04/30/2025). At the hearing, the United States proffered the Pretrial Services Report dated April 24, 2025, which included Defendant's criminal history and a recommendation that Defendant be detained. The government also proffered information as to the nature and circumstances of the offense, as set forth above. Defendant proffered the fact that he is a lifelong resident of the Northern District of Ohio,[1] that his mother would allow him to reside with her if released, and that he was employed as a union bricklayer. The Magistrate Judge took the government's motion for detention under advisement and later, on May 7, 2025, issued a written Order of Detention, finding by clear and convincing evidence "that there is no condition or combination of conditions would reasonably protect the safety of the community or others." (ECF # 13: Order, PageID 36).

Defendant filed the instant Motion to Revoke Detention Order on May 27, 2025. (ECF # 17: Motion).

## II. LAW AND ARGUMENT

Pursuant to Title 18, United States Code, Section 3145, "If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction

---

[1] The government noted at the hearing that, while Defendant reported to the Pretrial Services officer that he had lived with his mother at a house on Cuyahoga Street in Akron his entire life, he had previously stated to investigators in this case that he lived at the rental property on Corwin Avenue for approximately six years before being evicted.

over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). Upon such a motion by the defendant, the district court conducts a *de novo* review of the magistrate judge's order, "and must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Amir*, No. 1:10CR439-001, 2011 WL 2711350, at *3 (N.D. Ohio July 13, 2011) (quoting *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir.1992)); *see also United States v. Williams*, No. 4:22CR257 (N.D. Ohio June 29, 2022). "On review, the district court engages in the same analysis, with the same options, under [18 U.S.C. ] § 3142 as the magistrate judge." *United States v. Beard*, 528 F. Supp. 3d 764, 771 (N.D. Ohio 2021) (quotation omitted).

In the instant case, the Magistrate Judge appropriately weighed the § 3142(g) factors in light of the evidence offered by both parties at the detention hearing. Under this Court's *de novo* review, the evidence leads to the same findings as those made by the Magistrate Judge – that no condition or combination of conditions can reasonably protect the safety of the community, and that detention of Defendant is necessary.

As an initial matter, the United States agrees with the Magistrate Judge and Defendant that a rebuttable presumption in favor of detention applies under 18 U.S.C. § 3142(e)(3) because Defendant is charged with an offense carrying a maximum penalty of ten years or more which is listed in 18 U.S.C. § 2332b(g)(5)(B). The Magistrate Judge found that Defendant had rebutted that presumption. Even if true, however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (citing *United States v. Mercedes*, 254 F.3d at 436). "The presumption remains as a factor because it is not simply an evidentiary tool

designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Stone*, 608 F.3d at 945.

Evaluating the § 3142(g) factors, the Magistrate Judge found that each factor weighed in favor of detention. (ECF # 13: Order, PageID 36). Specifically, under § 3142(g)(1), the Magistrate Judge correctly determined that Defendant was charged in this case with a crime of violence, a factor which the statute specifies in the Court's consideration of the nature and circumstances of the offense. (*Id*.). Defendant asserts that the violent nature of his offense is undermined by the fact that "Congress did not mandate detention in cases where there is an allegation against people or property." (ECF # 17: Motion, PageID 65). But under § 3142(g)(1), Congress specifically identified crimes of violence as one category of offenses warranting special consideration in the detention analysis. Thus, far from rendering it just "one of many factors" for the Court to consider, the particularly dangerous nature of the offense charged weighs heavily in favor of detention.

Defendant also contends that because Defendant's conduct in setting a house on fire was directed only at one particular person, his conduct "do[es] not suggest a risk to the community at large but a more limited risk that can be mitigated by conditions of release." (ECF # 17: Motion, PageID 65). But this is plainly untrue. First, almost any arson offense – and most offenses of violence, for that matter – are aimed at a particular victim rather than the community at large. That does not lessen the seriousness of the conduct, nor mitigate the safety risk which a defendant charged with such a crime poses. Indeed, § 3142(g) contemplates detention in order to protect the safety not only of the community as a whole, but of particular persons in the community. Under § 3142(g)(4), the Court is specifically required to consider "the nature and

seriousness of the danger *to any person or the community* that would be posed by the person's release." *Id*. (emphasis added).

Second, while an act of arson may be aimed at one particular person or location, by its very nature, arson poses a risk to the safety of more than its intended target. A fire burns indiscriminately. By choosing fire as his means of harming the particular victim in this case, Defendant indicated a willingness to place at risk the safety of that person, her daughter, her neighbors, and the first responders who would necessarily be charged with extinguishing the fire. *United States v. Schwartz*, 2023 WL 3995637 at *7 (N.D. Ohio June 14, 2023) ("Arson undisputedly poses a great risk of harm to the community both through the risk of personal injury to first responders and bystanders and through economic harm to the community.") Thus, contrary to Defendant's assertion, the nature and circumstances of the charged arson offense weigh heavily in favor of detention because his conduct, though perhaps aimed at one person whom detention is necessary to protect, endangered the persons and property of a much wider portion of the community.

For largely the same reasons, under § 3142(g)(2), the weight of evidence against Defendant on the issue of detention is very strong. Defendant set fire to a home on a residential street while the occupants, whom he knew personally, were inside. The evidence, as proffered at the detention hearing, showed that just prior to setting the fire, Defendant bought gasoline, which he then used to set the fire by pouring it on the victims' wooden deck and intentionally igniting it. He then walked away, letting the fire burn while the victims were just inside the house and unaware of the fire. The dangerousness of that conduct is plainly obvious and is not lessened, as Defendant suggests, by the fact that he only set one house on fire, or that he was motivated by animus directed only toward the resident of that particular house.

Next, under § 3142(g)(3), the Court must consider the history and characteristics of the defendant. Here, the United States acknowledges that at the time of his arrest Defendant was employed, had lived in the Northern District of Ohio his entire life, and had strong family ties. But as the Magistrate Judge correctly noted, those factors are indicative of a lack of risk of flight, and none of them bear on the danger Defendant poses to the safety of the community. Indeed, all of those things were true when Defendant committed the arson charged in this case, and none prevented him from doing so.

Instead, this Court should consider the history and characteristics of Defendant that provide insight as to his risk of dangerousness and whether there are conditions that can adequately mitigate that risk. Defendant has prior convictions for unlawful sexual conduct with a minor (two separate cases), burglary, and domestic violence. (Pretrial Risk Assessment, pp. 4-8). These are serious offenses for which Defendant spent an aggregate of approximately four years in prison. In both cases in which he was convicted of unlawful sexual conduct with a minor, Defendant was placed on probation – once after judicial release from prison, once as part of his initial sentence. In both cases, Defendant violated the court's conditions and was either returned to prison or had his supervision extended. (*Id*. at pp. 5-6).

Defendant essentially asks this Court to disregard his criminal history as a factor in its detention analysis because his convictions occurred more than ten years ago. But despite its age, Defendant's criminal history is instructive. His convictions are for offenses which endanger the safety of others. Moreover, his conduct while on court supervision is at least an indication of why his proposed conditions of release in this case would be insufficient to mitigate the risk he poses to the community. The proposed conditions are aimed at preventing flight, not dangerousness. Ordering Defendant to live with his mother, wear an electronic monitor, or abide

by a curfew are all measures to ensure that his whereabouts are known. They do not prevent Defendant from continuing his dangerous conduct toward the victim or anyone else. Indeed, in her Order of Detention, the Magistrate Judge appropriately cited *United States v. Hanson*, 2022 WL 1813585 at *6 (N.D. Ohio May 3, 2022), in which the Court noted that "home detention and electronic monitoring at best elaborately replicate a detention facility without the confidence of security such a facility instills." To prevent Defendant from continuing to pose a danger to the community, the security of a detention facility is needed.

Taking all of the § 3142(g) factors into account and evaluating the evidence as a whole, it is clear that there is no condition of combination of conditions that will reasonably assure the safety of any other person and the community. As discussed herein, those factors clearly outweigh any evidence in support of bond. Accordingly, Defendant should be detained pending trial in this case.

Based upon the foregoing, the United States respectfully requests that this Court deny Defendant's motion to revoke the Magistrate Judge's order of detention.

Respectfully submitted,

CAROL M. SKUTNIK
Acting United States Attorney

/s/ Peter E. Daly

Peter E. Daly (OH: 0084745)
Assistant United States Attorney
Federal Building
2 South Main Street, Room 208
Akron, OH 445308
(330) 761-0529
Peter.Daly@usdoj.gov